[Crim. No. 36380. Second Dist., Div. Five. Jan. 8, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
NICHOLAS PEREZ, Defendant and Appellant.

**COUNSEL**

Derek L. Tabone, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TORRES, J.*—Defendant was charged in a three-count information with kidnaping for the purpose of robbery (Pen. Code, § 209), robbery (Pen. Code, § 211), and the unlawful taking of a vehicle (Veh. Code, § 10851) occurring on April 16, 1979. After a jury trial he was found guilty as charged and sentenced to prison for life. He appeals.

FACTS

At the pretrial hearing on defendant's motion for a preliminary ruling on the admissibility of evidence (Evid. Code, § 402), the prosecutor made an offer of proof as follows: "Your Honor, I have some deputies here, Deputy Grani and Valdemar, who are assigned to the Lynwood Station, experts in the street gang activities.

"I intend to show through the testimony of these deputies two things: that the defendant in this case, Mr. Perez, is a member of a gang called the CV3 and that in addition to that that the other codefendant in this case, who was identified by Mr. Bautista, is also a member of the CV3 gang, and the relevancy of this, first of all, shows an association between these two people which tends to corroborate the identification of Mr. Bautista, that is, Mr. Bautista picked out two people who have an association in the past and therefore he tends to be correct when he finds them as having been associated in this robbery against him. In other words, Mr. Perez and Ontiveros are not strangers to one another and that they associated in the past..

"In addition to that, this crime occurred at 8:00 o'clock on April 16, 1979. The car that was stolen from Mr. Bautista was used in a shooting at 1:25 a.m., on April 19, 1979, in which Perez drove that car by a house at 2914 East Poplar Street in Lynwood. That house was occupied by a member of the rival gang, Lynwood Paragons, and Mr. Marty Buchanan was a Lynwood Paragon, shot one of the passengers in that car as it drove by the house. Mr. Buchanan claims that the people in the car had guns and that is why he fired.

"So that would also show a motive for Mr. Perez to take that car so that he could use a stolen car and to drive by, about a day and a half

---

*Assigned by the Chairperson of the Judicial Council.

later. That would be my offer of proof concerning the admissibility of this. I don't intend to go into very deeply the association, just that these two are both members of the CV3, both of them have tattoos on their body which say CV3."

Defendant objected to any testimony relating to gangs or shootings on the grounds such testimony was not relevant and was so prejudicial as to far outweigh any probative value.

The court ruled that gang membership was relevant to the issue of identity and the shooting incident was relevant as to the accuracy of Mr. Denney's testimony.[1] The court stated, "Counsel, I think we have to consider two aspects. I'm going to be very zealous about the inflammatory nature of this testimony on your direct, on your case in chief. Rebuttal is a different matter. I'm not going to hamstring you on rebuttal, but I don't think you need to have that testimony as to all these other gang related things."

### PEOPLE'S CASE IN CHIEF

On the evening of April 16, 1979, Francisco Bautista was in possession of a 1965 Chevy Nova, license No. REW170, which he had borrowed from the owner Miguel Flores. Bautista drove over to an apartment building on El Segundo Boulevard, near Peach Street. He parked the car on the street, went into the apartment building and visited with his friends.

Bautista returned to the car at about 8 p.m. He entered the car and started it with a key. Before he had a chance to drive away, he was approached by a person Bautista identified as defendant. Defendant made an inquiry of Bautista, and then signaled to another person who also approached the vehicle on the driver's side. The second person, identified at the trial as Robert Ontiveros, placed a knife to Bautista's neck. The blade was four or five inches long. Defendant told Bautista to move over and turn the engine off. Defendant threatened to kill Bautista if he did not move over.

Defendant got into the driver's seat and told Bautista to give him all the money he had. Ontiveros got into the back seat and placed the knife

---

[1]Ricky Denney, a friend of defendant, was a passenger in the rear seat of the stolen car being driven by defendant at the time of the shooting on April 19, 1979.

to the back of Bautista's neck. As defendant was starting the vehicle, Bautista was removing the $17 he had in his pocket. He had some more change in his wallet. By the time Bautista had given defendant the money, they had traveled approximately half a mile. Bautista took his wallet out and placed it on the seat. He was asked for more money and was searched by Ontiveros. Defendant continued to drive the car and told Bautista to take off his boots. The car was stopped after driving around for 15 to 30 minutes. Bautista minus money, wallet and boots was ordered out of the car. Ontiveros got into the front seat and defendant drove off.

Sometime later, the police showed Bautista some photographs. Bautista was able to pick out photographs of defendant and Ontiveros. Bautista was asked on cross-examination if he had noticed anything unusual about defendant. He replied that he had not.

On April 19, 1979, Marty Buchanan resided at 2922 Poplar Drive, Lynwood. At 1:30 a.m., a car similar to the Chevy Nova belonging to Flores stopped in front of his home. He was in fear that the persons in the vehicle were going to shoot at his house so he got his rifle. He stated that a person in the back seat fired at him so he fired three rounds into the car. He was not able to identify any of the occupants in the car.

On the evening of April 18, 1979, Richard Leroy Denney had met defendant at Chico's Pizza Palace. Defendant picked Denney up in the 1965 Chevy Nova owned by Flores. There were two other individuals in the car, one of whom was Ontiveros. Defendant was the driver, Ontiveros sat in the front passenger seat, and Denney was in the back. In the early morning hours of April 19, 1979, the car was driven down Poplar Street. The car came to a stop in front of a house. Three shots were fired at the car, one striking Denney. He was taken to the Martin Luther King Hospital and left there for treatment. The 1965 Chevy Nova was found abandoned in the hospital lot, parked illegally. The front tire had collapsed, there was a bullet hole in the left rear fender, and there was a red stain on the rear seat which appeared to be blood.

Deputy Valdemar testified that he was a deputy sheriff for the County of Los Angeles assigned to Youth Services Bureau, Operation Safe Streets, Lynwood gangs. He has had approximately 50 hours of classroom study concerning street gangs and is familiar with the Mexican-American barrio gangs in the Lynwood/Compton area.

He has run across members of the Compton Varrios Tres gang in his duties. It is common among gang members to tattoo themselves prominently with their gang symbol. The gang symbol for Compton Varrios Tres is CV3. Defendant and Ontiveros are members of the Compton Varrios Tres gang and each has the tattoo CV3 on his hand.

Defendant and Ontiveros were required by the court to walk by the jury and show their tattoos. The court admonished the jury as follows: "Ladies and Gentlemen, I caution you again. These people aren't being tried for whether or not they are associated in a gang or club or sorority or fraternity. Goes only to issues of identification. That is all. No law against anyone belonging to a gang."

## DEFENSE

Defendant's sisters and the sister of Ontiveros testified that at the time of the kidnap-robbery on April 16, 1979, defendant was at Chico's Pizza Palace. Defendant testified that on the night of April 16, 1979, while at Chico's he saw Ontiveros arrive in the Chevy Nova. He further testified that in the early morning hours of April 19, 1979, he drove the Chevy Nova because of Ontiveros' intoxication. There was a key in the ignition, he did not know the 1965 Chevy Nova was stolen and he left it at the Martin Luther King Hospital because it was not "runable."

No rebuttal evidence was presented.

## ISSUES

Defendant Perez contends that: (1) the trial court committed prejudicial error in admitting evidence of the defendant's gang membership and of the shooting on April 19, 1979; (2) the trial court failed to exercise its discretion in sentencing defendant on the kidnap-robbery charge.

## DISCUSSION

On appeal the people argue that it is proper to introduce evidence which is either unpleasant or negative pertaining to an organization to which a defendant belongs where it can be shown that the organization to which the defendant belongs is relevant to an issue at trial.

█ We agree with this basic proposition and state at the outset that evidence of gang membership is not per se inadmissible. In order to be admissible it must meet the test of relevancy.

Evidence Code section 210 defines relevant evidence as "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

█ The asserted active membership in the "CV3" gang by defendant, as testified to by Deputy Valdemar, did not have any "tendency in reason" to prove a disputed fact, i.e., the identity of the person who committed the charged offense. Membership in an organization does not lead reasonably to any inference as to the conduct of a member on a given occasion. Hence, the evidence was not relevant. It allowed, on the contrary, unreasonable inferences to be made by the trier of fact that the defendant was guilty of the offense charged on the theory of "guilt by association." (*In re Wing Y.* (1977) 67 Cal.App.3d 69, 79 [136 Cal.Rptr. 390].)

When the gang and shooting incident evidence was offered, the prosecution had already proved the commission of the three charged crimes. Defendant had been identified as the first to approach and drive the car by Bautista, who was in the car with defendant for 15 to 30 minutes.

█ The prosecutor contended that evidence of the April 19, 1979, shooting was relevant to prove motive in that defendant took the car so he and the other occupants could attack the dwelling of a rival gang member. He argued that proving defendant was driving would be probative to some extent, that he had taken it without permission and that abandoning the car at the hospital showed knowledge the car was stolen. The trial court ruled evidence of abandonment would be relevant.

Evidence of other criminal acts or misconduct of a defendant may not be admitted at trial when the sole relevancy is to show defendant's criminal propensities or bad character as a means of creating an inference that defendant committed the charged offense. (Evid. Code, § 1101, subd. (a); *People v. Sam* (1969) 71 Cal.2d 194 [77 Cal.Rptr. 804, 454 P.2d 700].) Such evidence has been held admissible only when it was logically relevant to some material issue in the particular prosecution other than as character-trait evidence. (*People* v. *Durham*

(1969) 70 Cal.2d 171 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Schader* (1969) 71 Cal.2d 761 [80 Cal.Rptr. 1, 457 P.2d 841].)

The only possible relevant probative value of the April 19, 1979, shooting incident is the abandonment of the car to imply knowledge it was stolen. However, this is unreasonable and of slight probative value, if any. It is reasonable and logical to infer that the car was abandoned because it was not operable, had just been involved in a shooting and that the police might arrive at any moment to investigate.

■ Defendant objected to the introduction of any evidence relating to gangs or the shooting of April 19, 1979, on the grounds "that the prejudicial effect of that alone would be so great as to completely abate any probative value." He thereby specifically invoked the discretion vested in the court by Evidence Code section 352 to exclude relevant evidence "'if its probative value is substantially outweighed by the probability that its admission will ... create substantial danger of undue prejudice....'" (*People* v. *Green* (1980) 27 Cal.3d 1, 24 [164 Cal.Rptr. 1, 609 P.2d 468].)

■ It has been held that trial courts must weigh the admission of such evidence carefully in terms of whether the probative value of the evidence is greater than the potentially prejudicial effect its admission would have on the defense. (*People* v. *Gibson* (1976) 56 Cal.App.3d 119 [128 Cal.Rptr. 302]; *People* v. *Haston* (1968) 69 Cal.2d 233 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Green* (1980) *supra.*)

The record does not show that the trial court did in fact discharge its duty in these circumstances by weighing the evidence for prejudice against its probative value. It simply ruled that the evidence was relevant to either identity, knowledge, or credibility. The evidence was admitted with the jury being admonished.

All of the evidence in this case was presented in one day, August 8, 1979. At the section 402 Evidence Code hearing before presentation of the evidence, defendant brought to the attention of the trial court an article appearing in the Los Angeles Times that morning as follows: "Your Honor, I think the fact—today in part 3 of the Los Angeles Times in the view section—part 4 in the view section is a front page article, eighteen gang-related shootings on Whittier Boulevard in the last six months." The court responded: "Well, this isn't on Whittier Boulevard, is it?" Defendant offered to admit that he drove the car in question on

the morning of April 19, 1979, and that he was acquainted with Ontíveros. This offer was rejected.

The People on appeal contend that the mere fact that appellant belonged to a gang would not in itself be prejudicial and cite *People* v. *Zammora* (1944) 66 Cal.App.2d 166, 214 [152 P.2d 180].

*Zammora* was decided in 1944. In the decision on page 215 it states "it seems only reasonable to assume that the use of the word 'gang' referred only to the usual and ordinary crowd of young people living in any particular neighborhood, who associate themselves together, and from time immemorial has been referred to as a 'gang.'" Thirty-six years have passed since *Zammora*. It is fair to say that when the word "gang" is used in Los Angeles County, one does not have visions of the characters from the "Our Little Gang" series. The word gang as used in the case at bench connotes opprobrious implications. The trial judge in *Zammora* recognized that the use of the word "gang" takes on a sinister meaning when it is associated with activities. In the case at bench, gang membership was allowed to be associated with gang activities to the prejudice of the defendant.

We hold that the admission in this case of gang membership and the shooting incident on April 19, 1979, constitutes an abuse of discretion. Such testimony should have been excluded under Evidence Code section 352. The error was prejudicial. The defendant did not receive a fair trial. (*People* v. *Watson* (1956) 46 Cal.2d 818, 835 [299 P.2d 243].)

Because we are compelled to reverse the judgment, we do not consider any other issue.

The judgment is reversed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied February 5, 1981, and respondent's petition for a hearing by the Supreme Court was denied March 11, 1981. Richardson, J., was of the opinion that the petition should be granted.