[No. B110548. Second Dist., Div. Seven. Mar. 18, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
OSCAR RUIZ, Defendant and Appellant.

## COUNSEL

Gideon Margolis, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, and Robert F. Katz, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—A jury convicted appellant, Oscar Ruiz, of the sale of a controlled substance in violation of Health and Safety Code section 11352, subdivision (a). He appeals his conviction contending the trial court erred in permitting evidence he and another person who confessed to the crime were both members of the same criminal street gang. We find no abuse of discretion and affirm.

### FACTS AND PROCEEDINGS BELOW

On June 7, 1996, Los Angeles Police Officer Melissa Town was assigned as an undercover officer to the Valley Bureau Division of Narcotics. That day she drove an ordinary car and dressed in civilian street clothes. At approximately 4:00 p.m. Officer Town drove to the corner of Carl and Borden Streets in the Foothill area. This particular location is known by police for its drug activity.

As Officer Town approached the location she saw a group of five to seven male Hispanics standing in the driveway of the apartment buildings. Appellant was part of this group. She pulled into the driveway and motioned for appellant to come over. When he approached the passenger side of the officer's car she asked to purchase $7 worth of rock cocaine. Appellant asked Town if she was a police officer. When she answered "No," he removed a plastic baggie containing .10 grams of rock cocaine from his pant pocket and gave it to her in exchange for $7. Town engaged appellant in conversation for a minute or two. As she did so, she gave the signal on her one-way radio to Detective Holtz that she had a confirmed "buy." She asked appellant where she could find him later if she wanted to buy more cocaine. He replied his name was "Slim." During this time appellant kept looking up and down the street. All of a sudden appellant took off running and Officer Town drove off through the apartment parking lot.

Undercover Officer Pena arrived at the location a few minutes before Officer Town. He drove an old truck and wore shorts and a "muscle shirt." He parked the truck near the group of Hispanic males gathered in the apartment driveway. He got out and raised the hood of the truck as if he was working on the engine. He watched appellant leave the group and approach

Officer Town's car. He witnessed the entire exchange between them. Officer Pena gave appellant's physical description and clothing description by radio to the other 15 officers stationed nearby.

Suddenly the entire group of men began running away in all directions. The members of the drug "buy team" and the "chase" officers tried to capture appellant but he eluded them by hiding somewhere in the housing projects. Appellant nearly ran into Detective Holtz but escaped from him. Officer Pena nearly cut off appellant's escape from another part of the complex but appellant got away because Officer Pena was unable to call for police backup and had been directed not to make an arrest alone inside the apartment complex.

Three days later on June 10, 1996, the narcotics officers returned to the location at Carl and Borden Streets. A group of young Hispanic males was again congregated in the driveway of the apartment complex. This time Detective Holtz accompanied Officer Town. They drove into the driveway. They recognized appellant as one of the men in the group. Detective Holtz radioed to the uniformed officers to establish a perimeter around appellant's location and arrest him.

When arrested appellant had neither large sums of money nor drugs on his person. From Polaroid pictures taken on arrest Officer Town positively identified appellant as the person from whom she had purchased drugs at the location three days earlier.

Appellant's defense was alibi. Several family members testified appellant was at their mother's house in the late afternoon on June 7, 1996. June 7th was their mother's birthday and the family members met at their mother's house before taking her out to dinner.

An investigator with the public defender's office testified he interviewed one Miguel Valdez at defense counsel's direction. When interviewed Valdez was in lockup and shared the cell with appellant and others. During the interview appellant stood next to Valdez as Valdez told his story to the investigator. According to Valdez, it was he who sold the drugs to the undercover officer at the corner of Carl and Borden Streets on June 7, 1996. Valdez stated he did not know appellant and had never seen appellant before. Valdez told the investigator they met for the first time when they were placed in lockup together. Valdez stated he was certain appellant was not present at the corner of Carl and Borden Streets the day he sold the drugs to Officer Town.

In rebuttal Officers Town and Pena and Detective Holtz testified they visited Valdez in lockup and that after viewing him were positive he was not the person who sold Officer Town the drugs.

Also in rebuttal the People presented expert gang testimony of Los Angeles Police Officer Williams of the "CRASH" gang unit. He testified he was familiar with both appellant and Valdez based on his personal contacts with them, as well as from information recorded on field information cards prepared by other CRASH officers after other contacts with them. Officer Williams stated that based on his personal knowledge and on the field information cards, he believed both appellant and Valdez were members of the Pacoima Van Nuys Boys gang. According to appellant's representations noted in the field information cards, he had been a member since 1990. According to the police documentation, Valdez had been a member since 1987. Officer Williams testified that based on his personal dealings with the gang, the Pacoima Van Nuys Boys was a relatively small gang with fewer than 100 active members. The officer thus opined from the fact of their membership and the small size of the gang it was impossible for appellant and Valdez not to know each other.

The jury convicted appellant of the sale of a controlled substance. (Health & Saf. Code, § 11352, subd. (a).) The trial court sentenced appellant to the upper term of five years. Appellant appeals from the judgment of conviction.

## DISCUSSION

*In the Circumstances of This Case It Was Not an Abuse of Discretion to Admit the Limited Gang Expert Testimony to Challenge the Veracity of the Third Party Confession.*

Appellant sought to introduce Valdez's third party confession testimony as part of his defense at trial. On the advice of independent counsel Valdez invoked his Fifth Amendment right and refused to testify. Appellant then sought to introduce testimony of the defense investigator who had interviewed Valdez while incarcerated on an unrelated matter. As noted, Valdez confessed to the investigator it was he who had made the drug sale to undercover Officer Town on June 7, 1996, at the corner of Carl and Borden Streets.

The trial court noted Valdez's statement qualified as an exception to the hearsay rule as a statement against interest. (Evid. Code, § 1230.) Valdez's confession subjected him to possible criminal prosecution for committing the drug offense. In addition, Valdez was unavailable as a witness after invoking his constitutional right to remain silent. (Evid. Code, § 240, subd. (a)(1).) However, the trial court questioned the trustworthiness of the statement. The court entertained extensive briefing and argument on the issue whether Valdez's statement should nevertheless be excluded under Evidence Code section 352 as lacking indicia of reliability.

The prosecutor argued the statement should be excluded as untrustworthy and unreliable. The prosecutor further argued if Valdez's statement was admitted he would seek to prove Valdez's statement was fabricated in a material respect by introducing evidence Valdez and appellant were both members of the same small gang and must know each other. Appellant objected to any gang member evidence as unduly prejudicial and irrelevant to the only contested issue at trial, that of identity.

During argument the trial court acknowledged the potential prejudicial impact of gang evidence. The court reasoned "if I . . . allow the statement in I have to allow the gang membership in, and that's where I think there is prejudice and confusion. Because I do believe, [defense counsel], that evidence of gang membership offered to this jury would be a prejudicial fact and could affect the jury's verdict, and it would be something I would not want to bring before them, unless it was absolutely necessary. So it does look like bringing this in does have a substantial issue of confusion and prejudice attached to it. So that is where I'm going. . . ."

After further discussion and argument the trial court determined that in fairness to both sides it would permit Valdez's statement to go before the jury but would also permit the gang membership evidence to challenge the veracity of the statement. The trial court reasoned, "We have the issue that it seems very, very peculiar that someone who never met your client would come forward and testify and state that he committed this crime, and it's very unusual that he is interviewed with your client being present and interviewed at a location where your client and that person, Mr. Valdez, were together at the same time. . . . [¶] . . . [¶] So there is a very strong inference that could be argued that your client procured this other person to come forward, and the motive for doing that would be that they are in the same gang."

Appellant contends the trial court abused its discretion in admitting the gang membership evidence, claiming its probative value was far outweighed by its potential for prejudice and should have been excluded under Evidence Code section 352.[1]

California courts have long recognized the potential prejudicial effect of gang membership evidence. However, they have admitted such evidence when the very reason for the crime is gang related. (See, e.g., *People* v.

---

[1]Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

*Manson* (1976) 61 Cal.App.3d 102 [132 Cal.Rptr. 265] [motive for murders]; *In re Darrell T.* (1979) 90 Cal.App.3d 325, 328-334 [153 Cal.Rptr. 261] [motive]; *People v. Beyea* (1974) 38 Cal.App.3d 176, 194 [113 Cal.Rptr. 254] [motive]; *People v. Frausto* (1982) 135 Cal.App.3d 129 [185 Cal.Rptr. 314] [motive and intent].) Due to its potential prejudicial impact on a jury, our Supreme Court has condemned the introduction of "evidence of gang membership if only tangentially relevant, given its highly inflammatory impact." (*People v. Cox* (1991) 53 Cal.3d 618, 660 [280 Cal.Rptr. 692, 809 P.2d 351].)

■ Of course, evidence of gang membership should be excluded if the evidence is only relevant to prove a defendant's criminal disposition. "Evidence of other criminal acts or misconduct of a defendant may not be admitted at trial when the sole relevancy is to show defendant's criminal propensities or bad character as a means of creating an inference that defendant committed the charged offense. (Evid. Code, § 1101, subd. (a); *People v. Sam* (1969) 71 Cal.2d 194 [77 Cal.Rptr. 804, 454 P.2d 700].) Such evidence has been held admissible only when it was logically relevant to some material issue in the particular prosecution other than as character trait evidence. (*People v. Durham* (1969) 70 Cal.2d 171 [74 Cal.Rptr. 262, 449 P.2d 198]; *People v. Schader* (1969) 71 Cal.2d 761 [80 Cal.Rptr. 1, 457 P.2d 841].)" (*People v. Perez* (1981) 114 Cal.App.3d 470, 477-478 [170 Cal.Rptr. 619] [trial court abused its discretion in admitting evidence of defendant's gang membership which had limited probative value on the issues at trial].)

On the other hand, evidence of gang membership has been admitted to prove bias, provided it is not cumulative to other properly admitted, and less inflammatory, evidence. (See, e.g., *People v. Cardenas* (1982) 31 Cal.3d 897, 904-905 [184 Cal.Rptr. 165, 647 P.2d 569]; *People v. Maestas* (1993) 20 Cal.App.4th 1482, 1497-1498 [25 Cal.Rptr.2d 644].) Evidence of a relationship between a witness and a party is logically relevant to show bias. (3 Witkin, Cal. Evidence (3d ed. 1986) Introduction of Evidence at Trial, § 1921, p. 1875.) One such relationship is common membership in an organization: business, fraternal, national, etc. (*Ibid.*) "But when other evidence has established such a 'relationship' then common membership evidence is cumulative and, if prejudicial, inadmissible. (*People v. Cardenas* (1982) 31 Cal.3d 897, 904 [184 Cal.Rptr. 165, 647 P.2d 569]; *People v. Munoz* (1984) 157 Cal.App.3d 999, 1012-1013 [204 Cal.Rptr. 271].)" (*People v. Maestas, supra*, 20 Cal.App.4th at p. 1495.)

■ In this case there was no evidence of any relationship between appellant and Valdez. Indeed, they denied such a relationship. In his statement Valdez claimed he did not know appellant, had never met appellant

before, and had met appellant for the first time in lockup. Thus, the gang membership evidence was not cumulative to any other evidence tending to establish a relationship between appellant and Valdez. (Cf. *People* v. *Maestas, supra*, 20 Cal.App.4th 1482, 1495 [in case with compelling and overwhelming other evidence of codefendants' close relationship and affinity for one another, evidence they allegedly belonged to the same criminal street gang was cumulative and prejudicial].)

In addition, the gang membership evidence tended to impeach Valdez's statement in a material respect. The prosecutor was unable to directly impeach Valdez's statement at trial. Valdez had invoked his Fifth Amendment right not to testify and was unavailable as a witness. Therefore, the prosecutor was unable to challenge the assertions in his statement through the normal method of cross-examination. Appellant also did not testify at trial and therefore could not be asked about his relationship with Valdez or about Valdez's possible motives for confessing to the crime with which appellant was charged. Evidence they were both members of the same small gang tended to impeach Valdez's statement he had never met appellant before. This, in turn, tended to cast doubt on the veracity of Valdez's entire statement. Thus, the evidence was admissible for the additional purpose of pointing out the inconsistency between the gang expert's opinion testimony the two had to know each other and Valdez's assertion he had never met appellant before. This impeachment evidence was necessary to permit the jury to properly judge the credibility of Valdez's statement. (See Evid. Code, § 1202.)[2]

Unlike the situation in *People* v. *Maestas, supra*, 20 Cal.App.4th 1482, the evidence of gang membership was not used to discuss street gangs in general, or to introduce elements of gang violence, fear or retribution. (20 Cal.App.4th at p. 1499.) The sum total of the gang evidence in this case was the following: (1) based on the officer's personal contacts with appellant and Valdez and based on field information cards filled out by other police officers and maintained for reference by the police department, the officer stated his opinion that appellant and Valdez belonged to the same gang; and

---

[2]Evidence Code section 1202 provides in pertinent part: "Evidence of a statement or other conduct by a declarant that is inconsistent with a statement by such declarant received in evidence as hearsay evidence is not inadmissible for the purpose of attacking the credibility of the declarant though he is not given and has not had an opportunity to explain or to deny such inconsistent statement or other conduct. Any other evidence offered to attack or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness at the hearing. . . ."

(2) because there were fewer than 100 active members of this gang, it was impossible for appellant and Valdez not to know each other.[3]

Nor did the prosecutor dwell on gang evidence in his closing argument. He pointed out the two men had to know each other because they belonged to the same gang. The prosecutor then argued if Valdez lied about knowing appellant then his entire statement was likely fabricated. The prosecutor urged the jury to reject Valdez's purported confession as unworthy of belief.[4]

Appellant is correct in arguing the primary issue in this case was the identity of the perpetrator. The jury was presented with evidence of two possible suspects. Appellant was charged with the crime but had an alibi. Valdez was neither arrested nor charged but had confessed to committing the crime. In these extraordinary circumstances it would have been unfair to withhold from the jury evidence which had the potential to assist them determine the credibility of Valdez's statement professing guilt.

In sum, the gang membership evidence in this case was probative not only on the issue of Valdez's bias but also to prove a direct inconsistency in his statement. While gang evidence is generally inherently prejudicial, its prejudicial impact was considerably lessened in this case. As noted, the gang membership evidence was limited to the fact of their membership and the small size of the gang. Argument was similarly limited to the likelihood they knew each other from their common membership in the same gang, and the likelihood this relationship was Valdez's probable motive to give false evidence to protect a "homeboy."

On this record we cannot conclude the trial court abused its discretion in finding the probative value of the evidence was not substantially outweighed by a substantial danger of undue prejudice. (Evid. Code, § 352; *People* v.

---

[3]Appellant suggests the expert gang testimony was weak, unreliable and based on nothing more than conclusory and uncorroborated generalizations. However, under Evidence Code section 801 these were permissible matters on which Officer Williams could rely to form his expert opinion. (See *People* v. *Gamez* (1991) 235 Cal.App.3d 957, 966-969 [286 Cal.Rptr. 894], disapproved on another point in *People* v. *Gardeley* (1996) 14 Cal.4th 605, 624, fn. 10 [59 Cal.Rptr.2d 356, 927 P.2d 713] [court upheld gang expert testimony of officers whose opinions were based on personal observations and experiences, as well as on those of other officers in police department, and from discussions with gang members].)

[4]The prosecutor argued: "If it is as Valdez claims, and the defendant claimed, they didn't know each other before the 7th of June, the defendant wasn't at the scene on the 7th of June. How in the heck did they ever connect to put Mr. Valdez's statement before you?

"Now, if they did know each other before June 7th, then Valdez lied in his statement, and that is a material fact, and if he lied on a material fact in the statement, you should really distrust his entire statement."

*Cain* (1995) 10 Cal.4th 1, 33 [40 Cal.Rptr.2d 481, 892 P.2d 1224] [reversal on appeal requires a finding an abuse of discretion resulted in a manifest miscarriage of justice].) Accordingly, we further conclude the trial court did not abuse its discretion in admitting the limited evidence of gang membership and in denying a motion for new trial on that ground.

DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Neal, J., concurred.