Filed 11/17/20  P. v. Soto CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D076509 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS307529) |
| ESTEBAN MAGANA SOTO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Garry G. Haehnle, Judge.  Affirmed in part, reversed in part with directions.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

# I

# INTRODUCTION

A jury convicted Esteban Magana Soto of one count of unlawful driving of a vehicle (Veh. Code, § 10851, subd. (a); count 1), but acquitted him of one count of receiving a stolen vehicle (Pen. Code, § 496d; count 2). The court suspended imposition of a sentence for three years and placed Soto on formal probation, including 61 days in county jail to which the court applied credits for 31 actual days served plus 30 days for conduct.

Soto contends the trial court abused its discretion by allowing a California Highway Patrol investigator to testify about his observations of a pattern of young people who are recruited to drive stolen vehicles across the border in Mexico and his opinion that Soto's conduct fit this pattern. Soto contends this testimony had no relevance regarding the issue of whether Soto knew the car was stolen and amounted to improper expert testimony about Soto's guilt. The People contend that any error in admitting the investigator's testimony on these issues was harmless. Assuming without deciding there was error, we agree any such error was harmless.

In supplemental briefs submitted at our request, the parties agreed that recently enacted Assembly Bill No. 1950 (Stats. 2020, ch. 328, § 2), which amends Penal Code section 1203.1 to limit the probation term for felony offenses to two years, subject to certain exceptions not applicable here, will apply to this case because it will not be final before the amendment becomes effective on January 1, 2021. However, at oral argument, the People suggested they may take a different view of whether the amendment should apply retroactively under *In re Estrada* (1965) 63 Cal.2d 740, 748, depending on whether probation is considered a form of punishment. We deny the

2

People's request, made at oral argument, to submit additional briefing on this issue. Instead, we vacate the probation order and remand the matter to allow the trial court to consider in the first instance the applicability of the amended statute in exercising its sentencing discretion or modifying the probationary term. In all other respects, we affirm the judgment.

## II

## BACKGROUND

### A

On the evening of March 17, 2019, J.W.'s son could not find the keys to the family's 2008 Honda Civic. J.W. gave his son a ride to meet some friends less than a mile away from their Riverside County home. The Honda Civic was parked as usual in front of their house when they left. When J.W. returned home approximately 15 minutes later, the Honda Civic was gone. J.W. called the police and reported the vehicle stolen.

### B

### *1*

About a week later, at approximately 4:00 a.m. on March 23, 2019, Officer P., a Customs and Border Patrol agent, stopped Soto driving a Honda Civic at a port of entry from Mexico. The officer had received an alert that the approaching vehicle was reported as stolen. Soto provided a California identification card and a passport in response to Officer P.'s request for his traveling documents. When Officer P. asked if the car was his, Soto initially said it was and that he had it about a month. Within moments, however, he said he lied and it was really his friend's car who lived in National City. Soto said he was visiting his grandma in Mexico. Soto appeared nervous.

When the officer asked for the vehicle's registration, Soto pulled papers out of the glove box and looked through them. Officer P. said it took a long

3

time for him to find the registration. Soto provided a registration card listing J.W. as the registered owner. When Officer P. asked if J.W. was Soto's friend, Soto responded affirmatively. He then said the friend lived in Chula Vista. Officer P. asked Soto to go to secondary inspection.

2

Investigator Cruz works with the California Highway Patrol's Foreign Export and Recovery (FEAR) team to interdict stolen vehicles and components from being exported through land and sea ports. Investigator Cruz interviewed Soto after reviewing Officer P.'s report and confirming the vehicle was reported stolen to the Riverside Sheriff's Department.

Soto said he did not know the car was stolen. He told Investigator Cruz his friend Aaron called around midnight and asked him to take a car to Tijuana as a favor and deliver it to a girl at a party room. Aaron said he would give Soto cash for the favor, but did not say how much.

Aaron drove him to the car, which was parked in Chula Vista, and gave him the key. Soto claimed he asked if there was a problem with the car and why Aaron did not take it to Mexico. Aaron said he had other things to do. Soto followed Aaron, who drove in another car. Aaron turned off before the border and told Soto to drive straight. Aaron instructed Soto where to take the car once he crossed the border. He told Soto to ask for a ride back to the border after he delivered the car.

Soto said he was stopped in Tijuana and sent back to the United States because he did not have a driver's license. He said he told Officer P. that his friend was named J.W., so as "not to get into trouble." Later in the interview, however, Soto said he saw the name Aaron on the registration paperwork in the glovebox. Soto agreed the story sounded weird and said he messed up.

4

Investigator Cruz has investigated thousands of vehicle theft cases, including cases where stolen vehicles are taken to Mexico from the United States. He said Honda Civics are among the top two most commonly stolen vehicles. In his experience, when stolen vehicles are stopped at the border, the person driving is not usually the person who stole the vehicle. The drivers of these vehicles are typically younger males or females between the ages of 17 and 25, often with no criminal record. When the prosecutor asked why, defense counsel objected based on relevance and speculation. The court asked the prosecutor to lay a foundation.

Investigator Cruz observed this pattern in his own investigations and from talking to other investigators within the FEAR team and other agencies. He said it appears the young people are recruited through a friend or a friend of a friend who offers monetary compensation to drive vehicles into Mexico.

When the prosecutor asked Investigator Cruz if Soto fit the pattern of drivers driving stolen cars into Mexico, defense counsel objected to the question as calling for speculation. The court overruled the objection stating his response was based on his training and experience. Investigator Cruz agreed Soto fit the pattern.

When asked to explain, defense counsel objected that the question called for an improper opinion. The court overruled the objection. Investigator Cruz explained Soto fit the pattern based on his age, driving record, and his connection between the United States and Mexico. He said most of the individuals targeted to drive stolen vehicles are young Hispanic men and women with no history of theft. The individuals are offered money to cross the border with the stolen vehicles, which is consistent with Soto's

statement that his friend offered him money. He also noted Soto was a young Hispanic man with a clean driving record.

On cross-examination, Investigator Cruz acknowledged he did not discover who stole the car or who had possession of it before Soto. He also agreed he did not know if Soto was recruited by a vehicle theft ring.

## C

A police officer informed J.W. they had recovered the car at the Mexican border. The car had some damage to the rear fender and some belongings were missing from the trunk.

No one other than J.W.'s son had permission to use the car. Neither J.W. nor his son knew Soto or Aaron. No one gave Soto permission to drive the vehicle.

## D

Soto's brother testified for the defense. The brother said they knew Aaron since they were children because they attended the same church.

Aaron contacted the brother on the night of March 22, 2019 through a social media message. Aaron asked if the brother knew how to drive. The brother said he did not know how to drive and directed Aaron to Soto. Aaron sent Soto a message and asked him to take a car to Tijuana as a favor. Aaron came to their home and took the brothers to where the car was parked. Aaron gave Soto the car key. Soto drove the car to Tijuana. The brother rode with Aaron as they followed Soto to San Ysidro and waited. The brother denied knowing the car was stolen. He said Aaron never said it was stolen.

III

DISCUSSION

A

*Testimony Regarding Pattern of Conduct*

Soto contends the trial court abused its discretion in allowing the testimony from Investigator Cruz regarding the pattern he and other agents observe of young people who are recruited by friends to drive stolen vehicles across the border and the similarity of this pattern with the facts of this case. Soto contends there was no dispute that Soto drove a stolen vehicle on the promise for compensation. The issue for the jury was whether Soto did so with the requisite knowledge and intent to be found guilty of the charges of unlawfully driving a vehicle (Veh. Code, § 10851, subd. (a)) and receiving a stolen vehicle (Pen. Code, § 496d). He contends Investigator Cruz's testimony about the pattern of behavior was irrelevant to this issue because it had no tendency to prove Soto intended to deprive the owner of the Honda Civic of possession or ownership of the vehicle or that he knew the car was stolen. (See *People v. Perez* (1981) 114 Cal.App.3d 470, 477 [evidence of gang membership did not lead reasonably to an inference of member's conduct on a given occasion]; see also *People v. Covarrubias* (2011) 202 Cal.App.4th 1, 15–16 [criminal profile evidence is inadmissible to prove defendant's guilt] (*Covarrubias*).)

Soto also contends Investigator Cruz's testimony of how Soto fit the pattern of conduct was improper expert opinion regarding his guilt. (*People v. Torres* (1995) 33 Cal.App.4th 37, 47 [expert testimony not necessary for the meaning of the terms robbery and extortion]; contra *People v. Romo* (2016) 248 Cal.App.4th 682, 697 [agent's testimony that defendant was not a blind

mule transporting drugs based on various factors was not an improper opinion regarding guilt or innocence].)

We generally apply an abuse of discretion standard of review to any trial court ruling on the admissibility of evidence. (*People v. Waidla* (2000) 22 Cal.4th 690, 717.) Assuming, without deciding, the court abused its discretion in admitting Investigator Cruz's testimony regarding the pattern of using young people to drive stolen vehicles across the border and the similarities to Soto's description of the events leading to his arrest, we conclude any error was harmless. (*Covarrubias*, *supra*, 202 Cal.App.4th at p. 23.)

"[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.) This standard also applies to the erroneous admission of expert testimony. (*People v. Prieto* (2003) 30 Cal.4th 226, 247.)

Here, there was ample evidence of Soto's guilt for unlawful driving. When Soto was questioned by Officer P., he appeared nervous and repeatedly lied about the ownership of the car. He first said the car was his and he had owned it for about a month. However, he almost immediately admitted he was lying and said his friend let him borrow the car to visit his grandmother in Mexico. He twice revised his story about where his friend lived. When the officer saw J.W.'s name on the registration card, Soto agreed that was his friend's name. However, he later told Investigator Cruz his friend's name was Aaron and admitted he lied to Officer P. about his friend's name because

8

he did not want to get into trouble. These repeated false statements suggest consciousness of guilt.

Additionally, although Soto claimed he did not know the car was stolen, he told Investigator Cruz he asked his friend if there was a problem with the car. He also admitted the story of a friend with whom he had not spoken for a long time calling in the middle of the night to ask Soto, who did not have a driver's license, to drive a car into Mexico and drop it off with a girl at a party room in exchange for money sounded weird. He admitted he messed up.

The prosecutor only briefly mentioned in his closing statement Investigator Cruz's testimony about the similarity of the facts of this case with the pattern of young people driving stolen vehicles across the border. The focus of the argument was on Soto's repeated lies and the suspicious circumstances under which Soto claimed he was asked to do a favor. The prosecutor argued these factors presented strong circumstantial evidence Soto knew the vehicle was stolen.

The jury took its role seriously. It asked to review the transcript of Soto's initial interaction with Officer P. in which he repeatedly lied about the ownership of the car. Thereafter, the jury returned verdicts convicting Soto of count 1, but acquitting him of count 2. At the sentencing hearing, the court commented that he, like the jury, found Soto's story that he did not know the car was stolen "implausible." The evidence supported the jury's conclusion that Soto's behavior showed, at a minimum, he knew he was unlawfully driving the vehicle with an intent to permanently or temporarily deprive the rightful owner possession as required by Vehicle Code section 10851, subdivision (a).

Based on the entirety of the record, we conclude it is not reasonably probable Soto would have obtained a more favorable result in the absence of Investigator Cruz's testimony.

## B

### *Probation Term*

When Soto was sentenced, Penal Code section 1203.1 provided that a trial court may grant felony probation "for a period of time not exceeding the maximum possible term of the sentence[.]"  If the "maximum possible term of the sentence is five years or less, then the period of suspension of imposition or execution of sentence may, in the discretion of the court, continue for not over five years." (Pen. Code, § 1203.1, subd. (a).)  The court here granted probation for three years.

Effective January 1, 2021, Assembly Bill No. 1950 will amend Penal Code section 1203.1, subdivision (a) to limit the probation term for felony offenses to two years, except in circumstances not present here.  (Assem. Bill No. 1950 (Stats. 2020, ch. 328, § 2); Cal. Const., art. IV, § 8; Gov. Code, § 9600, subd. (a); *People v. Camba* (1996) 50 Cal.App.4th 857, 865.)

The parties initially agreed the statutory amendment will apply retroactively to this case because this matter will not be final when the amended statute becomes effective.  Soto contends his probationary period should be reduced to two years.  The People contended the matter should be remanded to give the trial court the opportunity to reconsider the sentence or modify the terms of probation in light of the amended statute.  At oral argument, the People asked for the first time to submit supplemental briefing on the issue of whether probation is a form of punishment subject to the *Estrada* rule providing ameliorative changes in the law should apply retroactively unless there is a savings clause.  (*In re Estrada, supra,* 63

Cal.2d at p. 748.) We deny the People's request to provide further briefing on this issue. The trial court should be given an opportunity to consider in the first instance whether the amendment to Penal Code section 1203.1, subdivision (a) applies retroactively and, if so, how it impacts the court's exercise of its sentencing discretion. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)

## IV

## DISPOSITION

The order granting probation is vacated and the matter is remanded for resentencing to consider the applicability, if any, of the amendment to Penal Code section 1203.1, subdivision (a), effective January 1, 2021. In all other respects, the judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

HUFFMAN, J.

11