Filed 3/20/13  P. v. Cook CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D060594 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD232133) |
| JERMAINE COOK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Desiree Bruce-Lyle, Judge.  Affirmed as modified, and remanded with directions.

A jury convicted Jermaine Cook of two counts of causing a concealable weapon to be carried concealed in a vehicle (Pen. Code,[1] § 12025, subd. (a)(3), counts 3 & 4).  It found true allegations that he participated in a criminal street gang (§ 12025, subd.

---

[1]    All statutory references are to the Penal Code unless otherwise stated.  Effective January 1, 2012, former section 12025, subdivision (a)(3) was renumbered as section 25400, subdivision (a)(3); former section 12025, subdivision (b)(3) was renumbered as section 25400, subdivision (c)(3); former section 12031, subdivision (g), was renumbered as section 16840, subdivision (b)(1).

(b)(3)), and the Department of Justice did not list Cook as the firearm's registered owner (§ 12025, subd. (b)(6)). The jury acquitted Cook of two charges of carrying a loaded firearm on his person. (§ 12031, subd. (a)(1), counts 1 & 2.) The court sentenced him to two years in state prison on count three, plus eight months on a previous charge that was reinstated because of his conviction in this case. (Health & Saf. Code, § 11350, subd. (a).) The court stayed the sentence on count four under section 654.

Cook contends: (1) the trial court erred in admitting prejudicial testimony from a gang expert regarding four unrelated gang shootings in San Diego that occurred in the approximately 11 days immediately before his arrest; (2) his conviction on count three must be reduced to a misdemeanor because insufficient evidence supported the gang enhancement on the issue of whether he knew about the West Coast Crips' (Crips) "pattern of criminal activity"; or, alternatively, he received ineffective assistance of counsel, due to his failure to object to a portion of the gang expert's testimony; (3) his conviction for causing a weapon to be concealed within a vehicle was based entirely on circumstantial evidence and, under CALCRIM No. 224, the jury could have drawn reasonable conclusions acquitting him. We affirm the judgment as modified, and remand with directions.

## BACKGROUND

On the night of January 20, 2011, San Diego police officers assigned to the gang suppression team were monitoring a house where several Crips members had gathered following a funeral for Keith Butler, a fellow Crips member who was murdered. The

officers stopped a Lincoln Navigator vehicle with several occupants. They requested additional backup, which arrived shortly afterwards.

San Diego Police Officer Kris Walb described the manner the officers carried out the stop: "[M]y job as a cover officer is I am watching everybody's hands inside the car, making sure nobody does anything, pull a weapon out or try to hide narcotics or anything to that effect. [¶] . . . [M]y main job is to watch them as they get out of the car to make sure they don't do anything to the officer on the way out of the car." He continued, "Before anybody was out of the car, we had everybody put their hands just on the headrest, so we could see them throughout the whole contact." After police had removed the front and middle row passengers, Officer Walb used his flashlight and checked the floor and behind the seats to make sure there was "nothing accessible, knives, guns, anything that they could grab on their way out of the vehicle," but he found nothing.

Officer Walb testified about the search of the vehicle's last row: "At the point where we wanted them to come out, Mr. Jermaine Cook and Judarian Greene were in the back seat, they both had their hands up on the headset [*sic*] in front of them. I had to have Mr. Cook kind of sit . . . back more in his seat, because I had to lift the seat up, because that's where his hands were when I moved it forwards [*sic*]." Officer Walb testified about Cook's exit: "Once we could quickly see that there was nothing easily accessible for [Cook] to grab, . . . I said, [']Keep your hands up. I just need you to come back out of the vehicle.['] [¶] At that point he is still kind of seated with his phone in his hand. And he didn't have anything in his left hand." Officer Walb explained, "It kind of happened quickly to where [Cook] is leaning forward. He was turned. And it was almost

3

as if he stumbled while saying, [']oh, hold up. I just dropped my phone.['] It was kind of a quick lunge forward, turn sideways type of motion to where I couldn't see his left hand. And I briefly lost sight of his right hand. [¶] And when he said he dropped his phone, I knew he had a phone in his hand, so I kind of thought that that's exactly what happened until I heard the thud hit the ground. And it just didn't sound like a small phone he had in his hand would have made that sound. And I couldn't see it. But when he came back up, he had the phone in his hand." Another officer immediately saw a silver revolver on the floorboard of the vehicle. Police retained Greene in the vehicle, with his hands extended the entire time, while Cook exited, and until police had removed the gun.

Detective Christopher Kilby was the primary investigator in this case, and had participated in the traffic stop. He testified that Cook and three other passengers in the Lincoln Navigator were Crips members. Detective Kilby had previously documented Cook as a member of the Crips gang and Cook had had 10 police contacts in the past 16 months. Cook had tattoos specifically associated with the Crips gang. Cook had been associating with other known gang members, claimed to be a gang member, and identified himself to police as a Crips member. His gang moniker was "J-Loco." Two days before Cook's arrest on the underlying charges, police arrested him while he was associating with Ronnell Dunn, a documented Crips member who also was sitting in front of Cook in the Lincoln Navigator on the day of Butler's funeral. The jury saw photographs of Cook flashing gang signs at a Crips party.

Detective Kilby opined Cook was an active participant in the Crips criminal street gang when he was arrested for the underlying crime, as evidenced by his having attended

4

the postfuneral gathering held in honor of a murdered gang member, which was a sign of respect to a deceased gang member and his family that fellow gang members are expected to perform, and because of Cook's association with the gang members arrested with him in the Lincoln Navigator.

Detective Kilby affirmed that Crips was a criminal street gang because "[t]here is definitely more than three persons [in it]. They claim a common sign, symbol, territory, name, criminal enterprise. They associate . . . on a continuous basis. And they are involved in an ongoing pattern of criminal activity." Moreover, some of Crips' "primary activities" are possession of a loaded handgun, assaults causing great bodily injury, shootings or assault with a deadly weapon, robberies, murders, rapes, kidnappings, carjackings, narcotics transportation and sales. Detective Kilby testified about three predicate crimes Crips had committed since 2006. Specifically, Patrick Burke was convicted of attempted murder and shooting at an occupied building in 2008; Kenny Dunn was convicted of assault with a deadly weapon based on an August 2006 incident; and, Ronnell Dunn pleaded guilty to assault with a deadly weapon, based on the same August 2006 incident. Detective Kilby also testified Cook was not a suspect in any of the predicate crimes.

Detective Kilby testified that between January 9 and 20, 2011, four shootings occurred in San Diego among Black gangs.

The prosecutor asked Detective Kilby the following hypothetical question on direct examination: "When an active participant of the West Coast Crips criminal street gang, someone who has had repeated and consistent contacts with law enforcement

5

where they were associating with other known West Coast Crips gang members, someone who is a documented member of the West Coast Crips, someone who has been contacted in the past with other West Coast Crips gang members, someone who is then contacted and found to be in possession of a firearm while in the presence of three other West Coast Crips gang members, one of whom had previously been convicted of an assault with a deadly weapon and admitted a gang allegation, and that contact, assume further, was leaving the after party of a funeral for a slain neighborhood Crip shortly after four Black street gang related shootings over the course of an 11-day period. Would someone in that active participant's position be expected to have knowledge of the West Coast Crips' primary activities?" Detective Kilby replied, "Absolutely," adding that the possession of a firearm would promote, further and assist individual Crips members to protect themselves, commit violent crimes, and elevate their status in the gang. According to the detective, this, in turn, would enhance the gang's status, enabling it to retaliate for the murders of its members.

## DISCUSSION

## I.

Cook contends the trial court erroneously admitted Detective Kilby's testimony regarding the four gang shootings in light of the fact no evidence showed Cook was aware of the shootings or participated in them. He further argues the testimony was prejudicial. We agree.

*Background*

At trial, defense counsel moved in limine to exclude San Diego Police Detective Kilby's gang expert testimony regarding a spate of gang shootings in San Diego that occurred between January 9 and 20, 2011. The People had proffered that the detective's testimony was relevant to establish Cook knew about the Crips' activities and, by possessing a firearm, Cook intended to promote, further and assist the Crips. The defense objected that the testimony prejudicially raised the possibility Cook was actively involved in those shootings.

The court believed, based on the People's offer of proof that the gang shootings involved rival gangs, and denied the motion, ruling, "The court has heard the arguments and did some research over the weekend and finds that courts have long recognized the potential prejudicial effect of gang membership evidence. But when the very reason for the crime is gang related, such evidence has been held to be admissible if it is relevant to prove knowledge and/or intent. And its prejudicial effect also does not outweigh the probative value. [¶] . . . [T]he evidence in this instance, as [the prosecutor states], is not being introduced to show [Cook's] criminal disposition or bad character. But, rather, it is being introduced to show [Cook's knowledge] of the gang's activities. [¶] The prosecutor is not precluded from eliciting expert testimony to provide the jury with information from which the jury may infer the motive for the crime or the perpetrator's intent. The testimony regarding the activities of rival Black gangs, which is what [the prosecutor] argued would be the testimony, would serve such a purpose. The time period within which the shootings to be testified to occurred is in close enough proximity to the events

7

leading up to [Cook's] arrest in this matter. [¶] The expert, however, may not testify as to his opinion of [Cook's] knowledge or his intent. In other words, the expert cannot testify that, in his opinion, [Cook] had the knowledge. He can testify to the events from which the jurors may infer. But he cannot give his subjective opinion as to [Cook's] knowledge at the time."

Following the court's ruling, the prosecutor added: "Your honor, just to clarify, the specific testimony that I will be eliciting is simply that [Cook] is not a suspect or an active suspect at this time. It would be, I think, improper to say specifically that he was not involved." The prosecutor continued, "[T]he People do not intend to inquire whether or not [Detective Kilby] has an opinion that [Cook] had direct affirmative knowledge of [the January 9-20 gang killings]. However, the People would be inquiring as to whether or not [Detective Kilby] has an opinion as to whether someone in [Cook's] position, with his contacts, with all of the numerous factors and elements that we have already discussed that demonstrate [Cook's] active participation, whether someone in that position would have affirmative knowledge of the gang's primary activities generally, not the specific shootings in that 11-day period."

The court permitted Detective Kilby to testify regarding the gang shootings in this exchange:

"[Prosecutor:] Detective Kilby, in addition to the shooting and killing of Keith Butler on January 9, 2011, did any other incidents occur involving shootings between [January] 9th and January 20, 2011?

"[Detective Kilby:] Yes, there were.

8

"[Prosecutor:]  Can you tell us how many?

"[Detective Kilby:]  There were four known shootings.

"[Prosecutor:]  At the time of the Defendant's arrest on January 20, 2011, did those shootings appear to be Black street gang related?

"[Detective Kilby:]  That is correct."

Consistent with the court's ruling, the parties stipulated, and the jury was instructed, that Cook was not a suspect in any of the shootings that occurred between January 9 and 20, 2011.

*Standard of Review*

Gang evidence is admissible if it is logically relevant to some material issue in the case other than character evidence, is not more prejudicial than probative, and is not cumulative.  (Evid. Code, §§ 210, 352; *People v. Carter* (2003) 30 Cal.4th 1166, 1194; *People v. Ruiz* (1998) 62 Cal.App.4th 234, 239-240; *People v. Sanchez* (1997) 58 Cal.App.4th 1435, 1449.)  Gang evidence is not admissible if introduced only to "show a defendant's criminal disposition or bad character as a means of creating an inference the defendant committed the charged offense." (*People v. Sanchez*, at p. 1449; *People v. Ruiz*, at p. 240.)  Even if gang evidence is relevant, it may have a highly inflammatory impact on the jury.  Thus, "trial courts should carefully scrutinize such evidence before admitting it." (*People v. Williams* (1997) 16 Cal.4th 153, 193; *People v. Carter*, at p. 1194 [evidence of a defendant's gang membership creates a risk the jury will improperly infer the defendant has a criminal disposition and is therefore guilty of the offense

9

charged, and must be carefully scrutinized]; *People v. Gurule* (2002) 28 Cal.4th 557, 653.)

A trial court's admission of evidence, including gang testimony, is reviewed for abuse of discretion. (*People v. Brown* (2003) 31 Cal.4th 518, 547; *People v. Carter*, *supra*, 30 Cal.4th at p. 1194; *People v. Waidla* (2000) 22 Cal.4th 690, 723.) The trial court's ruling will not be disturbed in the absence of a showing it exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.) Where gang evidence has minimal probative value, it should be excluded. (*People v. Albarran* (2007) 149 Cal.App.4th 214, 223; *People v. Carter*, at p. 1194; *People v. Avitia* (2005) 127 Cal.App.4th 185, 192-193.)

*Applicable Law Regarding Gang Membership*

A person is guilty of the substantive offense (§ 186.22, subd. (a)) when he or she "actively participates in [a] criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and . . . willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang." (*Ibid*.) The "actively participates" element is shown by evidence that a defendant's involvement with the gang " 'is more than nominal or passive.' " (*People v. Castenada* (2000) 23 Cal.4th 743, 752 (*Castenada*).) The "willfully promot[ed], further[ed], or assist[ed]" element can be shown when the defendant is either "the perpetrator of felonious gang-related criminal conduct [or the] aider and abettor." (*People v. Ngoun* (2001) 88 Cal.App.4th 432, 436.)

10

The "knowledge" element of a substantive offense under section 186.22, subdivision (a) has received limited judicial attention. In *People v. Green* (1991) 227 Cal.App.3d 692 (disapproved on other grounds by *Castenada*, *supra*, 23 Cal.4th at p. 748) the defendant challenged section 186.22, subdivision (a), as void for vagueness, and the court was required to examine the elements of that offense to determine whether the statute gave sufficient notice of the proscribed conduct to satisfy the due process clause. (*Green*, at p. 695.) Addressing the "knowledge" element, the court observed that "[t]he term 'knowledge' poses little difficulty. It is a term often used in the criminal law, and it means 'awareness of the particular facts proscribed in criminal statutes.' [Citation.] . . . 'Knowledge' means actual knowledge." (*Id*. at p. 702.)

Section 186.22 requires, for both the substantive offense under subdivision (a) and the enhancement under subdivision (b), that the prosecutor prove, separately as to the organization, that it qualifies as a "criminal street gang" by showing (among other things) that its members have committed least two predicate crimes. The three specific predicate crimes described by the expert satisfied this organizational showing. However, the substantive offense under section 186.22, subdivision (a), also requires the prosecution separately prove, as to the defendant, that (among other things) the defendant knew gang members had engaged in a "pattern of criminal gang activity," which means the prosecution must show the defendant actually knew gang members had engaged in at least two predicate crimes. However, the statute may be satisfied by evidence the defendant knew gang members engaged in two or more different predicate offenses than were used to show the organization qualified as a street gang.

11

*Abuse of Discretion in Admitting Evidence Regarding Gang Shootings*

We conclude Detective Kilby's testimony regarding the gang shootings was erroneously admitted because it was devoid of any probative value. In admitting the testimony, the trial court noted it involved "the activities of rival Black gangs." In fact, Detective Kilby's testimony failed to establish that the shootings involved rival Black gangs. He did not identify the gang affiliations of either the shooters or the victims, or explain what, if anything, the shootings had to do with Cook or the Crips. Based on this record, it is impossible to ascertain if the jury impermissibly considered the evidence of the shootings as part of the predicate gang activity to prove Cook had knowledge of the Crips' pattern of gang activity, and therefore Cook's gang membership. Accordingly, we strike the gang enhancement.

In view of our analysis of Cook's claim on the merits, we need not address his claim that his trial counsel provided prejudicial ineffective assistance by failing to object to Detective Kilby's expert testimony regarding Cook's knowledge of the Crips' criminal activities.

## II.

Cook contends we must reverse his conviction for causing a concealable weapon to be carried concealed within a vehicle because it is based entirely on circumstantial evidence and, under CALCRIM No. 224, the jury could only find him guilty if "the only reasonable conclusion supported by the circumstantial evidence is that the defendant is

12

guilty."[2] He maintains that other reasonable conclusions not pointing to guilt were available to the jury, namely, the jury could have concluded that the officer who checked the Lincoln Navigator for weapons and found none present did not conduct a comprehensive search and the gun could have been lying behind Cook's feet the entire time; the object the police heard fall on the floor might have been Cook's cell phone; the other passenger in the rear seat, who the police might not have been monitoring closely, could have been responsible for the gun's presence.

As noted, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence to support a conviction. " 'The relevant inquiry is whether, after viewing the evidence in the light most favorable to the People, *any* rational trier of fact could have found the essential elements of the allegation beyond a reasonable doubt.' " (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

We do not agree that the case against Cook was based entirely on circumstantial evidence. Rather, his convictions are supported mainly by direct evidence provided by the police officers who conducted the traffic stop. As set forth in detail above, the

---

[2]    CALCRIM No. 224 states: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.  [¶]  Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty.  If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence.  However, when considering circumstantial evidence you must accept only reasonable conclusions and reject any that are unreasonable."  The court also instructed the jury with CALCRIM No. 223 regarding the difference between direct and circumstantial evidence.

13

testimony of Detective Kilby and the other police officers constituted direct evidence of what they saw, heard and did both before and after they found the gun in the vehicle. The only relevant circumstantial evidence was that permitting the inference that Cook dropped the gun found inside the Lincoln Navigator. It was for the jury to decide whether to believe that Cook dropped a cell phone or the gun. By its verdict, it decided he had dropped the gun. It is not our role to reweigh this evidence on appeal.

Substantial evidence supports Cook's conviction for causing a concealable weapon to be carried concealed in a vehicle, especially through police testimony about the safety measures they implemented for their own protection as they carried out the traffic stop. Officers testified they were monitoring the funeral preemptively to avoid gang violence. In so doing, they stopped the Lincoln Navigator and, realizing seven passengers were inside, obtained backup. They instructed the passengers to keep their hands visible and forward at all times, before ordering them to exit in an orderly fashion, row by row. Police searched the vehicle for weapons after the first two rows had exited, but found none. Police observed the last row where Cook and Greene sat, and testified Greene's hands were extended on the armrest in front of him the entire time. As he was exiting, Cook claimed he dropped his phone, but the fallen object sounded louder than a phone, and immediately afterwards the officers found a gun. We also note the jury acquitted Cook of two counts and convicted him of two counts, thus indicating it deliberated carefully and weighed the evidence fully.

In any event, jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions. (*People v. Scott* (1988)

14

200 Cal.App.3d 1090, 1095.)  Here, under the plain language of CALCRIM No. 224, the jury was required to be convinced the People had proved each fact essential to his guilt beyond a reasonable doubt.  The instruction further stated, "Before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty."  Lacking any indication to the contrary, we presume the jury followed this instruction in convicting Cook.

## DISPOSITON

The judgment is modified to strike the gang enhancement; and as so modified, the judgment is affirmed.  The trial court is directed to resentence Jermaine Cook, amend the abstract of judgment and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


O'ROURKE, J.

WE CONCUR:

NARES, Acting P. J.

AARON, J.


15